Marisa DIMAS, Appellant

v.

The TEXAS STATE UNIVERSITY SYSTEM, Sam Houston State University, The Board of Regents of Sam Houston State University, Bobby K. Marks, in his official capacity as President of Sam Houston State University, & Sam Houston State University Police Department, Appellees.

No. 14–05–00664–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 15, 2006.

Sonia Marie Rodriguez, James Allon Hall, San Antonio, for appellants.

David Grant Halpern, Austin, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and GUZMAN.

## OPINION

ADELE HEDGES, Chief Justice.

In two points of error, appellant, Marisa Dimas, appeals the granting of a plea to the jurisdiction and motion to dismiss on behalf of the Texas State University System, Sam Houston State University, the Board of Regents of Sam Houston State University, Bobby K. Marks, in his official capacity as president of Sam Houston State University, and the Sam Houston

State University Police Department (hereinafter "appellees" or "the University"). We affirm.

## Background

In September 1999, appellant began her undergraduate studies at Sam Houston State University. Around 11:00 p.m. on September 2, as appellant was leaving the campus library, an unknown assailant dragged her beneath a dark stairwell and sexually assaulted her at knife-point near the Frels Office Building. Appellant sued appellees, alleging negligence, premises defect, breach of warranty, and violation of 42 U.S.C. § 1983.[1] In her negligence claims, appellant alleged that there was inadequate security on campus because university employees had "negligently implemented the campus' [sic] formulated safety policies." She also alleged that they were negligent "in their use or misuse of the light sources in the area where [appellant] was attacked; [and] of the security call-boxes on campus." In her premises liability claim, appellant alleged that her injuries "arose from a condition of the real property on campus," and that the university employees "failed to use ordinary care to keep the campus safe, properly lit, and free from criminal trespassers." She further alleged that appellees were negligent in "failing to inspect the property for dangerous conditions ... or to warn [appellant] of any such defect." Appellant pled the following allegedly negligent acts and omissions:

1. Maintaining the premises with visual obstructions behind which intruders could hide;
2. Failing to provide adequate lighting;
3. Failing to provide security fences;
4. Failing to provide functional emergency call boxes;
5. Failing to provide adequate on-site premises security;
6. Failing to warn of the risk of harm;
7. Failing to provide a safe residential environment for [appellant].

Appellees subsequently filed a joint plea to the jurisdiction and motion to dismiss, arguing that appellant had failed to establish a waiver of sovereign immunity. Appellees contended that appellant's claims arose out of discretionary "design decisions" and "policy-formulating decisions," for which immunity is not waived. Appellees also argued that the State is immune from complaints about inadequate security and the method of providing security.

In her response to appellees' plea to the jurisdiction, appellant elaborated that the time clocks controlling the light sources in the area in which she was attacked were defective and that the campus had experienced eight campus-wide power outages in the year preceding her enrollment. According to appellant, school officials knew of these defects, although she did not. Additionally, appellant asserted that the University replaced the time clock that controlled the lighting near the Frels Office Building just four months after the attack. Reiterating her earlier claims, appellant stated that "the deficient lighting in and around the area of the Frels Office Building created a premises defect, that the security on campus was inadequate, and ... that her injuries arose out of the defective time clock at the Frels Office Building, which she contends failed to function on September 2, 1999."

On November 1, 2002, at the hearing on the plea to the jurisdiction, the parties essentially reiterated their earlier arguments. Appellant also requested an op-

1. Appellant subsequently dismissed her claims against the university's president and Board of Regents, as well as her claims under 42 U.S.C. § 1983.

portunity to re-plead. Appellees attempted to introduce an affidavit of the campus's electrical foreman, Richard Sledge.[2] The trial court granted appellees' plea to the jurisdiction and joint motion to dismiss on May 23, 2005.

In her first point of error, appellant argues that the court erred in granting the plea to the jurisdiction because: 1) appellant's pleadings properly allege and substantiate a premises defect cause of action; 2) appellant pled a cause of action alleging the University's use or misuse of tangible property;[3] 3) appellant's pleadings allege and substantiate that the University negligently implemented a security-related safety policy; and 4) appellant's pleadings alleged negligence in the University's undertaking of maintenance activities, specifically the improper maintenance of campus security lights and timers. In her second point of error, appellant argues that the trial court erred by not granting her the opportunity to replead. In one conditional cross-point of error, appellees argue that the trial court erred in refusing to admit the affidavit of the campus's electrical foreman as jurisdictional evidence.

### Standard of Review

▮▮▮ A unit of state government is immune from suit and liability unless the State consents. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). A suit against a government employee in his official capacity is, in all respects, a suit against the governmental unit. *De Mino v. Sheridan*, 176 S.W.3d

359, 365 (Tex.App.-Houston [1st Dist.] 2004, no pet.). Mere reference to the Texas Tort Claims Act in the pleadings does not establish the State's consent to be sued and is thus insufficient to confer jurisdiction upon the trial court. *Tex. Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001). Governmental immunity from suit defeats subject matter jurisdiction. *Whitley*, 104 S.W.3d at 542.

▮▮▮ In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Id.* To determine if the plaintiff has met that burden, an appellate court considers the facts alleged by the plaintiff and, to the extent that it is relevant to the jurisdictional issue, the evidence submitted by the parties. *Id.* The pleadings are to be construed in favor of the plaintiff, and the court must look to the pleader's intent. *Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 804–05 (Tex.1989). Unless the petition affirmatively demonstrates that no cause of action exists or that plaintiff's recovery is barred, the trial court must give the plaintiff an opportunity to amend before granting a motion to dismiss or a motion for summary judgment. *Peek*, 779 S.W.2d at 805.

Here, the parties do not dispute that appellees are governmental units under the Texas Tort Claims Act ("Act"). Therefore, we will review appellant's pleadings and jurisdictional evidence to determine if her claims fall within a waiver of immunity.

---

**2.** According to appellees' brief, Sledge averred that he was on duty on the day of the alleged assault and was unaware of any problems with the lighting system. Sledge also testified that there were no reported malfunctions of the campus lighting system on the day of the attack, and he found no problems with the lights after the attack. However, this affidavit never became an exhibit and does not appear in the clerk's record on appeal.

**3.** In her brief, appellant uses the phrase "non-use" of property. However, the statutory language and appellant's arguments in her pleadings read "use or misuse," and her arguments on appeal are consistent with this wording.

### Analysis

#### A. Premises Defect

 First, appellant argues that sovereign immunity is waived because her pleadings properly allege and substantiate a premises defect cause of action. We disagree. Under the Texas Tort Claims Act ("Act"), a state entity can waive its sovereign immunity under limited circumstances. *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996). We must look to the terms of the Act to determine the scope of its waiver. *Id.* Section 101.021(2) of the Act provides that a state governmental unit is liable for

> personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (Vernon 2005). Furthermore, if a claim arises from an ordinary premises defect, "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a).

Appellant has failed to establish a waiver of immunity based on premises liability because the alleged defect did not proximately cause her injuries. Rather, the actions of her attacker, not the allegedly defective lights, were the proximate cause.

The First Court of Appeals addressed a very similar scenario in *Trevathan v. State*, 740 S.W.2d 500, 502 (Tex.App.-Houston [1st Dist.] 1987, writ denied). In *Trevathan*, plaintiffs Terry and Roseann Trevathan sued the State after Roseann was attacked in a bath house at a state park. *Id.* at 500–01. Alleging premises liability under Section 101.022(a), the Trevathans claimed that the State had failed to provide adequate security, and that the State "knew, or should have known, that dangerous persons entered the premises after the security guard left the premises." *Id.* at 500–02. They also alleged that the State's "failure to lock the entry gate, to provide locks on the bath house, to provide proper lighting, and to provide adequate patrolling" contributed to their injuries. *Id.* The court of appeals affirmed the trial court's grant of summary judgment in favor of the State. *Id.* at 503. The court stated:

> The Trevathans' attempt to frame their argument in terms of defective premises is unpersuasive. In reaching this conclusion, we have not overlooked the fact that the lock on the bath house was broken or that some of the lights were out. . . . [I]t was the conduct of the assailant that proximately caused their injury, exclusive of the condition of the property.

*Id.* at 502. Accordingly, appellant has failed to establish a waiver of immunity based on a premises liability theory. *See also City of San Antonio v. Butler*, 131 S.W.3d 170, 180 (Tex.App.-San Antonio 2004, pet. denied) (noting that plaintiffs failed to state a claim for premises defect arising from drunken patron's behavior where patron jumped over a railing, landed on plaintiff, and injured him). We overrule appellant's first point of error.

#### B. Use or Misuse of Tangible Property

 Second, appellant argues that sovereign immunity is waived because she pled a cause of action alleging the University's use or misuse of tangible property. We disagree. Texas courts have consistently required a nexus between the condition or use of property and the injury. *Whitley*, 104 S.W.3d at 543; *Miller*, 51 S.W.3d at 588; *Dallas County Mental Health and Mental Retardation, et. al. v. Bossley*, 968 S.W.2d 339, 342–43 (Tex.

1998). This nexus requires more than mere involvement of property; rather, the condition or use must actually have caused the injury. *Bossley*, 968 S.W.2d at 343. Property does not cause injury if it does no more than furnish the condition that makes the injury possible. *Miller*, 51 S.W.3d at 588; *Bossley*, 968 S.W.2d at 343.

In *Miller*, the plaintiff's husband, Clyde Edwin Miller, III, became ill while incarcerated in the Texas Department of Criminal Justice (TDCJ) facility in Huntsville. 51 S.W.3d at 585. Miller was suffering from nausea and severe headaches, and on-site physicians administered various medications that alleviated his symptoms. *Id.* After fifteen days, Miller was hospitalized at the University of Texas Medical Branch (UTMB) and diagnosed with cryptococcal meningitis. *Id.* He died less than a month later. *Id.*

Miller's wife brought a negligence action against the State, the TDCJ, and UTMB. She alleged that her husband's personal injury and death were proximately caused by the defendants' misuse of tangible property, specifically: (1) improperly administering medications that masked Miller's symptoms; (2) improperly reading and interpreting fever-detecting equipment; and (3) improperly using clinic facilities and equipment in diagnosing and treating Miller. *Id.* The TDCJ filed a plea to the jurisdiction, alleging that Miller had failed to bring her claim within the Act's limited waiver of sovereign immunity. *Id.* at 586. The trial court denied the plea to the jurisdiction, and the First Court of Appeals affirmed. *Id.* The supreme court reversed, holding that Miller had failed to demonstrate a waiver of immunity under the Act. *Id.* at 589. The court reasoned that although Miller's treatment "might have furnished the condition that made the injury possible by suppressing symptoms that TDCJ staff otherwise could have rec-ognized as meningitis," the treatment itself did not harm him, hasten his decline, or cause his death. *Id.* at 588.

Similarly, in *Bossley*, the family of patient Roger Bossley filed suit after Bossley escaped from a state-operated mental hospital, was hit by car, and died. 968 S.W.2d at 340–41. Bossley had been expressing suicidal thoughts, so doctors decided to transfer him to a more restrictive facility for further evaluation. *Id.* at 340. Because patients often resisted such transfers and tried to escape, hospital personnel followed standard procedure and locked the front door of Bossley's residential unit; however, a self-locking glass door immediately inside the front door remained open. *Id.* Bossley's doctors considered taking further safety precautions, but ultimately none were taken. *Id.* The day after Bossley's doctors ordered the transfer, technician Angela Jones saw Bossley in the hallway. *Id.* Jones passed through the inner doorway and left the self-locking door open behind her. *Id.* Before unlocking the outer door, she glanced around and did not see anyone nearby. *Id.* However, in the few seconds it took Jones to unlock the outer door, Bossley approached her from behind, shoved her aside, and fled. *Id.* at 341. Bossley ran about half a mile to the interstate, where he attempted to hitchhike. *Id.* When police and hospital staff approached him, he leaped in front of a truck and was killed. *Id.*

Bossley's parents brought negligence claims against the hospital and several employees, alleging a waiver of immunity under Section 101.021(2). *Id.* Specifically, they alleged that Jones's unlocking the outer door without first locking the inner door or determining Bossley's whereabouts proximately caused his death. *Id.* The trial court granted summary judgment in favor of the defendants, but the Fifth Court of Appeals reversed, reasoning

that "the involvement of some condition or use of tangible property" is sufficient to waive immunity. *Id.* The supreme court reversed, stating that the proximate cause requirement of Section 101.021(2) "is more than mere involvement [of property]." *Id.* at 343. The court reasoned:

If only involvement were required, the waiver of immunity would be virtually unlimited, since few injuries do not somehow involve tangible personal or real property. Requiring only that a condition or use of property be involved would conflict with the Act's basic purpose of waiving immunity only to a limited degree.

*Id.* Although the court acknowledged that the unlocked doors facilitated Bossley's escape, it held that "the use and condition of the doors were too attenuated from [Bossley's] death to be said to have caused it." *Id.*

Here, the allegedly defective lights did not cause appellant's injuries; rather, the assailant's acts proximately caused her injuries. Assuming that the timers malfunctioned, the mere involvement of this property is not sufficient to establish a waiver of immunity under Section 101.021(2).[4] *See Miller,* 51 S.W.3d at 589–90; *Bossley,* 968 S.W.2d at 343; *see also Whitley,* 104 S.W.3d at 542 (holding that plaintiff who was threatened on a public bus by another passenger and then attacked when both exited did not establish waiver of governmental immunity because his injuries did not arise from the use of the bus); *Brown v. Houston Indep. Sch. Dist.,* 123 S.W.3d 618, 619 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (holding that plaintiff who was sexually assaulted by police officer in his patrol car did not establish waiver of governmental immunity because her injuries did not arise out of the use of the

car). Furthermore, although malfunctioning light timers may have caused the area near the Frels Office Building to be dark, thus furnishing the condition that made the attack possible, this condition does not establish the requisite causal nexus. *See Whitley,* 104 S.W.3d at 542; *Miller,* 51 S.W.3d at 589–90; *Bossley,* 968 S.W.2d at 343; *Brown,* 123 S.W.3d at 621. Accordingly, we overrule appellant's second point of error.

### C. Negligent Implementation of a Security Policy

 Third, appellant argues that sovereign immunity is waived because her pleadings allege and substantiate that the University negligently implemented a security-related safety policy. We disagree. "The negligent implementation of policy theory does not itself waive sovereign immunity." *Perez v. City of Dallas,* 180 S.W.3d 906, 914 (Tex.App.-Dallas 2005, no pet.). "Waiver of immunity must be demonstrated under some provision of the Texas Tort Claims Act before a claim of negligent implementation of policy can be invoked." *Id.* Furthermore, the negligent implementation of a policy theory does not establish a waiver of immunity if the death or injury did not arise from the use or condition of tangible personal property. *Id.* As stated above, appellant has failed to establish a waiver of immunity under a premises liability theory or a misuse of tangible personal property theory. Therefore, appellant's waiver argument based on negligent implementation fails. *See id.* at 914–15 (holding that plaintiff's claim of negligent implementation of policy was "unavailing" because plaintiff failed to demonstrate waiver of immunity under the Act and negligent implementation claim did not arise from the use or condition of

---

4. At the hearing, appellant's counsel conceded that "[w]e don't have any evidence at this point" that the lights were out when the attack occurred.

tangible personal property). We overrule appellant's third point of error.

### D. Negligent Maintenance

 Fourth, appellant argues that sovereign immunity is waived because her pleadings alleged negligence in the University's undertaking of maintenance activities, specifically the improper maintenance of campus security lights and timers. Maintenance activities undertaken at the operational level do not constitute discretionary functions for which immunity is waived. *City of Fort Worth v. Gay,* 977 S.W.2d 814, 817 (Tex.App.-Fort Worth 1998, no pet.) (stating that city had waived immunity in slip-and-fall case where plaintiff alleged that city failed to maintain, clean, and inspect the area where she fell); *Mitchell v. City of Dallas,* 855 S.W.2d 741, 745 (Tex.App.-Dallas 1993), *aff'd* 870 S.W.2d 21 (Tex.1994) (holding that city was not immune from claims based on negligent construction and maintenance of retaining wall, where plaintiffs' son crashed his bicycle and fell about twenty feet). However, appellant's waiver argument fails because the University's allegedly improper maintenance did not proximately cause her injuries. In *Gay* and *Mitchell,* for example, the facts demonstrated that the alleged negligence proximately caused the plaintiffs' injuries; Gay fell as she stepped into a flooded gutter, and the Mitchells' son plunged over a rock wall. *Gay,* 977 S.W.2d at 815; *Mitchell,* 855 S.W.2d at 744; *see also Stephen F. Austin State Univ. v. Flynn,* No. 12–03–00240–CV, 202 S.W.3d 167, 171, 2004 WL 948885, at *1, 7 (Tex.App.-Tyler 2004, pet. granted) (holding that university was liable for negligently maintaining sprinkler system where stream of water knocked plaintiff off her bicycle). Here, however, as in *Trevathan,* the attacker's actions, not the allegedly negligent maintenance, proximately caused appellant's injuries. *See*

*Trevathan,* 740 S.W.2d at 502. Accordingly, we overrule appellant's fourth point of error.

### E. Opportunity to Replead

 Fifth, appellant contends that the trial court erred in failing to grant her an opportunity to replead. We disagree. The trial court need not grant the plaintiff an opportunity to amend before granting a motion to dismiss if the petition affirmatively demonstrates that no cause of action exists or that plaintiff's recovery is barred. *Peek,* 779 S.W.2d at 805. Here, appellant's pleadings demonstrate the absence of proximate cause; therefore, the court did not err in failing to grant appellant the opportunity to replead. We overrule appellant's final point of error.

### F. Conclusion

Because we overrule all of appellant's points of error, we need not address appellees' conditional cross-point. We affirm the trial court's judgment.