

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00026-CV

———————————————

JANE DOE, Appellant

V.

CITY OF FORT WORTH, Appellee

---

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-313623-19

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Opinion by Chief Justice Sudderth

## OPINION

Appellant Jane Doe was repeatedly sexually assaulted while working at an animal shelter as a teen volunteer for Appellee the City of Fort Worth. At the time, the City owned the animal shelter and employed Doe's assailant. Doe sued the City for negligent supervision, premises liability, and other torts, but the trial court concluded that Doe's claims were barred by sovereign immunity, so it dismissed her case.

Doe challenges that dismissal and the corresponding finding of immunity. She alleges that (1) the City is not immune from her claims because its volunteer program is a proprietary function; (2) even if it is immune, such immunity is waived under the Texas Tort Claims Act because Doe's pleadings alleged that her injuries were caused by the use of tangible personal property, that her injuries were caused by a premises defect, and that the City was engaged in a joint enterprise with PetSmart; and (3) regardless, she was entitled to an opportunity to amend her pleadings to remedy any jurisdictional defects.

We disagree on all three fronts. Doe's claims stem from the City's governmental animal control function, and even after amending her petition, she failed to allege facts showing that the City used personal property to cause her injuries, that it knew of a premises defect that caused her injuries, or that PetSmart had any liability for her injuries whatsoever.

2

It is undisputed that Doe's sexual assault was, in the City's words, "reprehensible," "awful," and something "we can all agree should not have happened." But the City is immune from Doe's tort claims. Accordingly, we will affirm.

## I. Background

A former City employee, Christian Benjamin Morgan, repeatedly sexually assaulted then-15-year-old Doe while Doe was working as a volunteer at the City's animal shelter.[1] Morgan often served as Doe's supervisor at the shelter, and he exposed his penis to her and had sexual contact with her while there. He was indicted for his actions. He no longer works for the City.

Doe sued the City for Morgan's assaults and for the City's related actions or inactions.[2] In Doe's original petition, she alleged assault, sexual assault, intentional infliction of emotional distress, negligence, gross negligence, negligent supervision, premises liability, and various constitutional violations. Generally, Doe's negligence and premises liability claims alleged that the City failed to provide a reasonably safe

---

[1]Doe refers to the shelter as the Animal Care and Adoption Center, while the City refers to it as the Animal Care and Control Center.

[2]Doe's parents filed the underlying lawsuit as next friends of Doe, *see* Tex. R. Civ. P. 44, but Doe reached the age of majority while this appeal was pending. *See* Tex. Civ. Prac. & Rem. Code Ann. § 129.001. Doe elected to continue the appeal in her own name, and we granted her motion to substitute. *See Hopebridge Hosp. Hous., L.L.C. v. Lerma*, 521 S.W.3d 830, 833 & n.1 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

workspace, failed to provide reasonable supervision, and created a hazardous premises condition by employing Morgan. She pleaded that the City was not immune from any of her claims because the City was engaged in a non-governmental, proprietary function: its volunteer program. Doe's original petition did not mention the Texas Tort Claims Act (TTCA).

The City responded with a plea to the jurisdiction asserting sovereign immunity. It offered evidence and legal arguments to show that it was engaged in a governmental function—animal control—when it was alleged to have committed the tortious conduct, and it contended that Doe's petition, taken as true, failed to allege facts showing that the TTCA waived its immunity.

After the plea was filed, Doe amended her petition. She retained and reasserted her argument that the City was not immune from her claims, but she also added new allegations to situate her claims within the TTCA. Doe's amended petition pointed to the shelter's surveillance cameras, keycards, and animals as the items of personal and real property that triggered the TTCA; she alleged that the City failed to properly use and monitor its surveillance cameras, that it provided Doe with a keycard that allowed her to access the shelter and to work alone with Morgan without adequate supervision, and that it used animals to lure her to the dangerous work environment. All of this, Doe alleged, was part of the City's failure to adequately supervise and protect her from Morgan—himself a dangerous condition—and all of it caused her sexual assault. Doe also noted that the City partnered with PetSmart for

4

aspects of its volunteer program, and she claimed that this partnership constituted a joint enterprise that waived the City's immunity.

The City supplemented its plea to address Doe's new allegations, prompting Doe to expand on her arguments by filing a response in which she adjusted her allegations as to the tangible personal and real property that she claimed triggered the TTCA. In her response, Doe added that the surveillance cameras on the premises were misplaced and non-functioning, and she referenced the shelter's rooms and enclosures as additional components of the hazardous premises condition. Doe also offered evidence that the City's volunteer program was proprietary, and she asked that she be given the opportunity to amend her amended petition if the trial court found it to be defective.[3]

The trial court held a non-evidentiary hearing on the City's plea. At the hearing, Doe's counsel identified the keycard as the relevant item of tangible personal property—explaining that "[the City] gave [Doe] a key card that let her come and go"—and focused on the surveillance cameras as the relevant premises defect—explaining that "the fact that security wasn't adequate is a premises defect."

The trial court granted the City's plea and dismissed Doe's claims, implicitly denying Doe's request to amend. Doe appeals, abandoning her constitutional and

---

[3]After Doe filed her response, the City filed a reply with additional legal analysis of the arguments it had asserted previously.

5

intentional tort claims but challenging the dismissal of her negligence and premises liability claims.[4]

## II. Standard of Review

Sovereign immunity from suit defeats a trial court's subject matter jurisdiction. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex. 1999). Sovereign immunity is inherent in the state's sovereignty, and certain local governmental entities—including municipalities—enjoy its protection as well.[5] *See Univ. of the Incarnate Word v. Redus*, 602 S.W.3d 398, 404–05 (Tex. 2020). But municipalities are immune "only when they act 'as a branch' of the state and not when they act 'in a proprietary, non-governmental capacity.'"

---

[4]While Doe did not expressly abandon her constitutional or intentional tort claims, she does not discuss them on appeal, nor does she address all of the possible grounds that were raised in the City's plea for dismissal of those claims. When, as here, "the trial court grants a plea to the jurisdiction and does not state the basis of its ruling, we may affirm on any basis preserved in the record," and if an "appellant fails to attack one of the possible grounds on which [the] judgment was granted, the judgment *must* be affirmed." *Mann v. Denton Cnty.*, No. 02-16-00030-CV, 2017 WL 526309, at *6 (Tex. App.—Fort Worth Feb. 9, 2017, pet. denied) (mem. op.) (emphasis added). Therefore, to the extent that Doe did not intend to abandon her constitutional or intentional tort claims, the trial court's dismissal of them must nonetheless be affirmed.

[5]Technically, "[s]overeign immunity protects the state and its divisions, while governmental immunity protects political subdivisions." *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 703 (Tex. 2019). We use the phrase "sovereign immunity" for ease of reference and to avoid confusion in our discussion of governmental and proprietary functions. *Cf. Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 n.1 (Tex. 2006) (using "sovereign immunity" for both governmental and sovereign immunity concepts).

*Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 366–67 (Tex. 2019) (quoting *Wasson Ints., Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018)); *see Univ. of the Incarnate Word*, 602 S.W.3d at 404–05. Determining whether a municipality is immune from a given cause of action is a two-step analysis: we "first determine whether the subject matter of the suit stems from a proprietary or a governmental function of the municipality," and then, if "the action arose out of the municipality's performance of a governmental function, immunity applies and it must be overcome by a [plaintiff] establishing a valid waiver." *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 451–52 & n.3 (Tex. 2016); *see City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 241 (Tex. App.—Fort Worth 2018, pet. denied). We review both steps of this analysis de novo. *See Matzen v. McLane*, No. 20-0523, 2021 WL 5977218, at *3 (Tex. Dec. 17, 2021); *Wheelabrator Air Pollution Control, Inc.*, 489 S.W.3d at 451.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties and necessary to resolve the jurisdictional issues. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Westworth Vill.*, 558 S.W.3d at 240. Here, the parties presented evidence regarding the governmental–proprietary distinction,[6] but as we shall see, this issue

------

[6]In her response to the City's plea, Doe also attached evidence regarding the City's alleged joint enterprise with PetSmart. The relevant portion of the City's plea, though, challenged Doe's joint enterprise theory on the pleadings.

turns on a question of law, and the facts relevant to this question of law are undisputed.[7]

The TTCA portions of the City's plea, meanwhile, challenged Doe's pleadings. When a plea to the jurisdiction challenges the pleadings, we determine whether the plaintiff alleged facts affirmatively demonstrating the trial court's jurisdiction. *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012); *Miranda*, 133 S.W.3d at 226–27. "We construe the pleadings liberally in favor of the plaintiff[] and look to the pleader['s] intent." *Miranda*, 133 S.W.3d at 226. Even under a liberal construction, though, the plaintiff bears the burden of demonstrating, through the facts alleged in her live pleading, that immunity from suit has been waived. *City of Fort Worth v. Rust*, No. 02-20-00130-CV, 2020 WL 6165297, at *2 (Tex. App.—Fort Worth Oct. 22, 2020, no pet.) (mem. op.); *see City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022) ("The party suing the governmental unit bears the burden of affirmatively showing waiver of immunity.").

---

[7]On appeal, the City frames its TTCA argument in terms of the sufficiency of the evidence, stating that "the jurisdictional evidence conclusively showed" that the plea should be granted. But in the trial court, the City's plea to the jurisdiction framed its TTCA argument as a pleading defect, stating that Doe "failed to plead facts necessary to demonstrate a waiver of the City's immunity."

## III. Discussion

Doe's three arguments on appeal are patterned after her arguments at trial:[8] she claims that (1) the City is not immune from her claims, (2) if immune, the TTCA waives the City's immunity, and (3) the trial court erred by failing to give her an opportunity to amend.

### A. The City was performing a governmental function, so it is immune.

The first question then, is whether the City is immune from Doe's claims at all. Sovereign immunity bars Doe's claims only if the City's allegedly tortious conduct was committed while it was engaged in a governmental function rather than a proprietary function. *See Wheelabrator Air Pollution Control, Inc.*, 489 S.W.3d at 451–52. Doe argues that the City was engaging in a proprietary function, but we disagree.

### 1. The Law: Proprietary v. Governmental Functions

Generally, activities "enjoined on a municipality by law . . . to be exercised by the municipality in the interest of the general public" are governmental functions, while activities normally performed by a municipality "in its discretion . . . [and] in the interest of [its] inhabitants" are proprietary. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a), (b); *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438–39 (Tex. 2016). Although the line between proprietary and governmental functions "has not

---

[8]Doe structures her appellate arguments as four issues, but because two of those arguments allege waiver under the TTCA, we construe Doe's four issues as three. Doe's three issues are reordered for organizational purposes.

been a clear one," *Wasson Ints., Ltd.*, 489 S.W.3d at 438–39 (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006)), as to certain functions the legislature provided clarification by statutorily identifying them as either proprietary or governmental. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215; *Wasson Ints., Ltd.*, 489 S.W.3d at 438–39; *see also* Tex. Const. art. XI, § 13(a) (authorizing "the legislature [to] by law define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary"). If a municipality is performing a governmental function, and particularly when that governmental function is expressly designated as such by statute, the municipality has sovereign immunity. *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 388–89 (Tex. App.—Fort Worth 2008, no pet.) (recognizing that "[i]f a function is included in this nonexclusive list of governmental functions, the Legislature has deemed it governmental in nature, and we have no discretion or authority to hold otherwise"); *see Hunnicutt v. City of Webster*, 641 S.W.3d 584, 591–92 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (similar).

The legislature has statutorily designated "animal control" as a governmental function. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(33).

### 2. Application: The City's Governmental Animal Control Function

Although the parties offered evidence to support their trial court arguments regarding the governmental–proprietary distinction, the relevant facts were and are undisputed: Doe was a volunteer in the City's animal shelter where she assisted with

10

the City's animal control function. The parties disagree, though, as to the legal import of these facts.

The City argues that because its allegedly tortious conduct was committed while it was providing animal control services and because animal control is statutorily designated as a governmental function, Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(33), the City enjoys sovereign immunity. Doe contends that animal control is not the relevant function for purposes of the governmental–proprietary distinction. Instead, according to Doe, the relevant function is the volunteer program because she was at the shelter through the program, the primary purpose of which, she argues, is civic engagement.

As support for her argument, and relying on the Texas Supreme Court's 2018 decision in *Wasson*, Doe contends that the proprietary–governmental distinction turns on the purpose of her underlying contract with the City, which was her participation in the volunteer program. *See Wasson Ints., Ltd.*, 559 S.W.3d at 149 ("We hold that, to determine whether governmental immunity applies to a breach-of-contract claim against a municipality, the proper inquiry is whether the municipality was engaged in a governmental or proprietary function when it entered the contract, not when it allegedly breached that contract."). Because Doe was working for the City as a

11

volunteer, and because Doe believes that the City's centralized volunteer program is a propriety function,[9] she reasons that the City is not immune from her claims.

But *Wasson* was a breach of contract case. This is not. The governmental–proprietary determination requires consideration of the "context within which the [allegedly tortious] conduct occurred," *see Tex. Bay Cherry Hill*, 257 S.W.3d at 389, and in a breach case like *Wasson*, that context is the parties' contract, *see Wasson Ints., Ltd.*, 559 S.W.3d at 149. Here, Doe is not suing the City for a breach of her volunteer employment contract, if any such contract exists. Doe is suing based on the City's allegedly negligent conduct in its maintenance and supervision of the animal shelter while it was performing its animal control function.

A municipality has the discretion to perform its governmental functions through various types of workers, whether employees, volunteers, or contractors. *See City of San Antonio v. Butler*, 131 S.W.3d 170, 178 (Tex. App.—San Antonio 2004, pet. denied) ("The City has discretion to perform or not perform many activities in connection with its government functions."); *see also City of Plano v. Homoky*, 294 S.W.3d 809, 815 n.1 (Tex. App.—Dallas 2009, no pet.) (same, quoting *Butler*). Neither the existence of this discretion nor the City's exercise of it creates a separate proprietary island within what is statutorily declared to be a governmental function.

[9]Because the City does not agree that the volunteer program is the relevant function for purposes of the governmental–proprietary analysis, it does not address Doe's characterization of that program as proprietary.

*See Butler*, 131 S.W.3d at 178; *cf. City of Mexia v. Tooke*, 115 S.W.3d 618, 625 (Tex. App.—Waco 2003), (quoting *City of Houston v. First City*, 827 S.W.2d 462, 480 (Tex. App.—Houston [1st Dist.] 1992, writ denied), for the rule that "[t]he mere fact that [a] function has been assigned to a private [entity] does not change the nature of the function from governmental to proprietary"), *aff'd*, 197 S.W.3d 325 (Tex. 2006).

Several of our sister courts have reiterated and applied this rule in the contractor context. *See, e.g.*, *Butler*, 131 S.W.3d at 178 (rejecting argument that the municipality's use of contractors to sell alcohol at Alamodome reclassified that aspect of the municipality's governmental function as proprietary); *Tooke*, 115 S.W.3d at 624–25 (holding that municipality was performing governmental function even though it contracted with plaintiff to provide waste collection services); *cf. Rogers v. City of Houston*, 627 S.W.3d 777, 796 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (holding that "the provision of police services, even by an off-duty officer, is still a part of 'police and fire protection and control' and thus a governmental and not a proprietary function" where off-duty police officer arrested plaintiff while working for energy company). We find the analyses in these cases persuasive and hold that the same rule applies to volunteers. In fact, many of the functions that the legislature has statutorily designated as governmental are functions that traditionally use volunteers. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(14) ("museums"), (a)(15) ("libraries"), (a)(17) ("community, neighborhood, or senior citizen centers").

13

In the circumstances of this case, then, the fact that Doe was hired through a centralized volunteer department is immaterial to the governmental–proprietary analysis. The City did not commit its allegedly tortious conduct while Doe was in the hiring process working directly with centralized volunteer-program employees. Rather, the City committed its allegedly tortious conduct while Doe was assisting with the City's animal control function by working at the City's animal shelter with shelter employees—one of whom was Doe's assailant. The fact that the City used both employees and volunteers to perform its animal control function does not change the function's governmental nature. Doe cannot "split various aspects of [the City's animal control] operation into discrete functions and recharacterize certain of those functions as proprietary." *Homoky*, 294 S.W.3d at 815 (quoting *Butler*, 131 S.W.3d at 178, and rejecting argument that municipality's provision of a golf course—a governmental function—could be separated from its operation of an on-premises clubhouse and restaurant); *see Henry v. City of Angleton*, No. 01-13-00976-CV, 2014 WL 5465704, at *3 (Tex. App.—Houston [1st Dist.] Oct. 28, 2014, no pet.) (mem. op.) (recognizing that "the introduction of a proprietary element into an activity designated by the Legislature as governmental does not serve to alter its classification").

The City was thus performing a governmental function—animal control—when it engaged in the allegedly tortious conduct that injured Doe. It is immune from Doe's claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(33). We overrule Doe's third issue.

14

**B. The TTCA does not waive the City's immunity.**

Doe next argues that, even if the City is immune from her claims, the TTCA waives the City's immunity because her pleadings alleged facts showing that (1) her injuries were caused by a use of tangible personal property—keycards and the keycard system; (2) her injuries were caused by conditions of real property—surveillance cameras and rooms; and (3) the City would "be liable to the claimant according to Texas law" because it was engaged in a joint enterprise with PetSmart. *See id.* § 101.021(2). We disagree.

**1. The Law: TTCA**

Because the City is immune for the allegedly tortious acts committed while performing its governmental animal control function, Doe bore the burden of pleading facts to show that her claims fit within a "clear and unambiguous" legislative waiver of immunity. *See* Tex. Gov't Code Ann. § 311.034; *Arbuckle v. Wichita Cnty. Tex. Adult Prob.*, No. 02-21-00085-CV, 2022 WL 488923, at *2 (Tex. App.—Fort Worth Feb. 17, 2022, no pet.). She pleaded the TTCA.

As applicable here, the TTCA waives a municipality's immunity for "personal injury . . . so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). This portion of the TTCA contemplates two general types of claims: "premises defects[] and injuries arising out of conditions or use[s] of [personal] property." *Cnty. of Cameron v. Brown,*

15

80 S.W.3d 549, 554 (Tex. 2002) (quoting *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000)). And because the TTCA's waiver of immunity extends to situations in which "the governmental unit would, were it a private person, be liable," Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2), it encompasses not only the municipality's conduct but also joint enterprise liability, which "makes 'each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other.'" *Able*, 35 S.W.3d at 613 (quoting *Shoemaker v. Whistler's Est.*, 513 S.W.2d 10, 14 (Tex. 1974)). Whether the plaintiff is relying on the municipality's own "condition or use" or that of a municipal agent engaged in a joint enterprise, though, the plaintiff must plead facts that, among other things, (1) demonstrate that the condition or use qualifies as such for TTCA purposes, (2) demonstrate that the condition or use actually caused the plaintiff's injuries; and (3) if the condition is alleged to be a premises defect, show that the defect was actually known to the defendant but not to the plaintiff. *See Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001) (discussing "use"); *Tarrant Cnty. v. Carter-Jones*, No. 02-17-00177-CV, 2018 WL 547588, at *4 (Tex. App.—Fort Worth Jan. 25, 2018, no pet.) (mem. op.) (listing premises liability elements). Doe's pleadings did not satisfy these requirements.

## 2. Application: No Waiver

Doe did not plead facts showing (1) that the City's provision of keycards and maintenance of a keycard system qualified as "use[s]" of tangible personal property, or that they caused her injuries; (2) that the City's surveillance cameras and rooms

16

qualified as premises defects, or that any such defects were known to the City but not to Doe; or (3) that PetSmart was liable for Doe's injuries at all. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2).

### a. Personal Property

First, Doe's pleadings did not allege a qualifying "use" of personal property that contemporaneously caused her sexual assault. Her pleadings and appellate arguments reference two alleged uses of personal property: the City's provision of a keycard and its maintenance of a keycard system. Neither qualifies as a "use" within the meaning of the TTCA.

Regarding the City's provision of a keycard, Doe's amended petition alleged that the City's "[i]ssuance of a key card to Jane Doe to allow her to come and go from the shelter with little to no supervision" negligently caused her sexual assault.[10] But the mere provision of nondefective personal property is not a "use."[11]

---

[10]Doe's pleadings also mentioned the surveillance cameras and shelter animals as items of tangible personal property "use[d]" by the City, but she does not raise either argument on appeal.

[11]Although Doe's response to the City's plea referenced case law that applied a narrow exception to this rule, the exception only applies when the personal property is provided without an integral safety component, and Doe did not allege that her keycard was provided without an integral safety component. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 389 (Tex. 2016) (recognizing that "non-use and furnishing access are distinguishable from situations in which a governmental unit 'provided equipment that lacked an integral safety component'"); *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex. 2005) (noting that the integral-safety-component rule should be applied narrowly); *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 247 (Tex. 2004) (limiting the precedential value of the relevant case law "to claims in

"'Use' means 'to put or bring into action or service; to employ for or apply to a given purpose.'" *Miller*, 51 S.W.3d at 588 (quoting *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)). Doe's "argument [thus] erroneously equates providing, furnishing, or allowing access to tangible property with putting or bringing the property into action or service or applying the property to a given purpose." *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 98 (Tex. 2012) (holding that hospital did not "use" a plastic bag by allowing suicidal patient to access the bag); *see Dallas Cnty v. Posey*, 290 S.W.3d 869, 871 (Tex. 2009) (holding that county did not "use" corded phone by providing it to suicidal patient). "If all 'use' meant were 'to make available', the statutory restriction would have very little force." *San Antonio State Hosp.*, 128 S.W.3d at 246 (rejecting argument that hospital "use[d]" walker and suspenders by giving them to suicidal patient); *cf. City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016) (recognizing that "merely furnish[ing] a circumstance 'that makes the injury possible'" does not satisfy the TTCA's causation requirement either (quoting *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998), *superseded by statute on other grounds as recognized in Indem. Ins. Co. v. City of Garland*, 258 S.W.3d 262, 268 (Tex. App.—Dallas 2008, no pet.))).

Whether for this reason or for other reasons, Doe frames her argument slightly differently on appeal. Now, she identifies the City's maintenance of a keycard *system*

which a plaintiff alleges that a state actor has provided property that lacks an integral safety component").

as the relevant use of tangible personal property. This allegation fails for the same reason: Doe has not alleged an active "use" of the keycard system.

A use of tangible personal property is distinguishable from a condition of real property under the TTCA in that it is "the contemporaneous, affirmative action or service (use) . . . of the tangible property itself that allegedly caused the injury," rather than "a condition created on the real property by the tangible personal property (a premises defect)." *Sampson*, 500 S.W.3d at 390. An extension cord strung across a pedestrian walkway, for example, is a "use" of personal property if a governmental agent brings the cord into action at the time of the injury, such as by pulling it taut to trip the plaintiff. *Id.* If the cord is simply sitting on the ground as a static tripping hazard, however, it is a premises defect. *Id.* at 390–91; *see also United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 472–73 (Tex. 2017) (holding that plaintiff alleged premises liability claim because his injuries "resulted from a physical condition left on the property—a hole in the scaffold platform, covered by an unsecured sheet of plywood—and not some contemporaneous activity"); *Harris Cnty. v. Shook*, 634 S.W.3d 942, 949–52 (Tex. App.—Houston [1st Dist.] 2021, pet. filed) (holding that motorcyclist's claim was a premises defect rather than a use of tangible property where a malfunction in the governmental entity's toll-gate sensor system led the motorcyclist to strike the gate, sustaining injuries).

Here, even assuming Doe's appellate keycard-system argument was preserved, she does not argue that a City agent actively employed a tangible component of the

19

keycard system to cause her injuries. Instead, Doe argues on appeal that "[she] and her assailant worked together, and the [City] negligently allowed this to happen, including using an automated entry system and it gave Jane Doe access through this system." But this is not an active, contemporaneous engagement of the keycard system by a City actor; it is an indirect reference to the City's provision of a keycard, which we have already held is not a "use."[12]

Doe attempts to support her position by analogizing the City's keycard system to the gorilla in *City Of Dallas v. Heard*, 252 S.W.3d 98 (Tex. App.—Dallas 2008, pet. denied). There, a gorilla at the Dallas zoo escaped from its outdoor exhibit and attacked the plaintiffs. *Id.* at 102. The Dallas Court of Appeals held that the plaintiffs adequately pleaded a "use" under the TTCA because the gorilla was tangible personal property that the City of Dallas used as an attraction. *Id.* at 109–10. And because the gorilla was "a wild and dangerous animal," the City of Dallas was strictly liable for the injuries caused by the gorilla. *Id.* at 108, 110, 112. Doe argues that "[t]his easily translates to the facts here . . . if in place of 'gorilla' we use the key card system." The two items are not comparable.

In *Heard*, the relevant property was a wild and dangerous animal that was being actively employed as an attraction at the time of the injury, and the property itself—

---

[12]To the extent that Doe argues she was the one who "use[d]" the City's keycard or keycard system, the TTCA "waives immunity for claims based upon the 'use' of tangible personal property only when the governmental unit itself uses the property." *Rusk State Hosp.*, 392 S.W.3d at 97.

the gorilla—directly attacked the plaintiff. *See id.* at 109–10. Doe's amended petition did not allege that the City's keycard system was inherently wild or dangerous, that it was ever employed as an attraction, or that the keycard system itself attacked her. Rather, Doe alleged that the City provided her with a keycard that allowed her to work with a dangerous human and that she was injured by the City's "fail[ure] to protect" her from the crimes committed by that human. A human is not an item of tangible personal property that can be "used" within the meaning of the TTCA. The gorilla in *Heard* was a very different situation.

But *Heard* highlights a related flaw in Doe's pleadings: even if the City's maintenance of a static keycard system could qualify as a "use" under the TTCA, Doe did not allege facts showing a casual nexus between this use and her injuries.

For a use of property to have "caused the [plaintiff's] injury," it must "serve[] as a substantial factor in causing the injury and without which the injury would not have occurred." *Sanchez*, 494 S.W.3d at 726 (internal quotation marks omitted) (quoting *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 929 (Tex. 2015)); *see Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 807–08 (Tex. App.—Fort Worth 2008, no pet.). "When a condition or use of property merely furnishes a circumstance 'that makes the injury possible,' the condition or use is not a substantial factor in causing the injury"; rather, the use "must actually have caused the injury." *Sanchez*, 494 S.W.3d at 726 (first quoting *Bossley*, 968 S.W. at 343; and then quoting *Posey*, 290 S.W.3d at 872). The City's maintenance of a keycard system was but one of many

circumstances that Doe alleged made her sexual assault possible, but Doe's pleadings did not demonstrate that it was the actual, contemporaneous cause of her injuries.

Instead, the City's maintenance of its keycard system is comparable to the use of unlocked doors in *Lee. See Tex. Dep't of Mental Health & Mental Retardation v. Lee.* 38 S.W.3d 862, 867–69 (Tex. App.—Fort Worth 2001, pet. denied). There, the hospital's unlocked doors allowed the plaintiff's assailant to enter her room, where he sexually assaulted her. *Id.* at 867–68. Although the alleged use of the door—leaving it unlocked—"was part of a sequence of events that ended in the sexual assault, the use and unlocked condition of the doors were too attenuated from [the plaintiff's] injuries to be said to have caused them." *Id.* at 868. At bottom, the "true substance of [the plaintiff's] complaint [wa]s that the sexual assault was caused, not by the condition or use of the hospital doors, but by the failure of the [facility] staff to protect her from her assailant . . . [—]conduct that does not fall within the [TTCA's] limited waiver of immunity." *Id.* at 868; *see also Bossley*, 968 S.W.2d at 343 (holding that use and condition of unlocked doors merely "permitted [the suicidal patient's] escape" but did not cause his death).

The same is true here. The substance of Doe's complaint is that her sexual assault occurred, not by the City's maintenance of a keycard system or provision of a keycard, but by the City's "allowing a sexual predator to work alone with and beside Jane Doe" without additional supervision and "failing to protect [Doe] from sexual assault." Even taking the allegations in Doe's amended petition as true, the City's use

of its keycard system was not the actual cause of her injuries. Doe thus failed to plead facts situating her claims within the TTCA's waiver for injurious uses of tangible personal property.

### b. Real Property

Doe did not allege facts situating her claims within the TTCA's waiver for premises defects either.

If a TTCA claim arises from a premises defect, "the governmental unit owes to the [plaintiff] only the duty that a private person owes to a licensee on private property,"[13] Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a), and the plaintiff must allege that (1) the premises condition created an unreasonable risk of harm; (2) the municipality actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the municipality failed to exercise ordinary care to protect the licensee from the danger; and (5) the municipality's failure proximately caused the licensee's injuries. *Sampson*, 500 S.W.3d at 391; *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g); *Carter-Jones*, 2018 WL 547588, at *4.

---

[13]Doe does not allege that she paid for the use of the premises. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a) (providing exception where "the claimant pays for the use of the premises").

23

Doe's live, amended petition identified the real property relevant to the TTCA as the shelter's surveillance cameras.[14] She alleged that "employing and continuing to employ Morgan . . . created an unreasonable risk of harm," that the City knew or should have known this danger,[15] and that it "fail[ed] to utilize and monitor security cameras properly." Doe did not allege that the cameras themselves created a dangerous condition; she alleged that the cameras should have been used to supervise and learn of the dangerous condition: a sexual predator.

A human is not a condition of real property. And the failure to monitor cameras is not a condition of real property, either; it is a nonuse of property or a nonuse of information. *Cf. Webb Cnty., Tex. v. Sandoval*, 88 S.W.3d 290, 294 (Tex. App.—San Antonio 2002, no pet.) (noting that "immunity is not waived for claims involving the non-use of property" and holding plaintiff's claims regarding the misuse of surveillance camera information did not fit within the TTCA because "[i]mmunity is not waived for any claim involving the misuse of information [as] information is an intangible"); *Lamar Univ. v. Doe*, 971 S.W.2d 191, 197 (Tex. App.—Beaumont 1998, no pet.) (noting that, even if the governmental entity knew that assailant was a suspected pedophile, the entity's misuse of that information was not relevant to the

---

[14]Doe's petition referenced the keycard as a premises defect as well, but she does not raise that argument on appeal.

[15]"Actual knowledge, rather than constructive knowledge of the dangerous condition is required." *Sampson*, 500 S.W.3d at 392.

24

TTCA because "[t]he utilization of information does not constitute a use of tangible personal property, let alone real property").

But, just as Doe adjusted her personal property allegations in subsequent filings, she similarly recast her real property allegations in her response to the City's plea and in her brief before this court. *See Sandoval*, 88 S.W.3d at 294 ("Pleadings relevant to a review of a plea to the jurisdiction include amended petitions and responses filed in connection with the plea."). In those, Doe argued that the cameras were "either non-functioning or improperly placed," and she added a new reference to the facility's "doors, rooms, and enclosures," arguing that both the cameras and the rooms "permitted Morgan to have unlimited, unmonitored access to Jane Doe, provided the seclusion necessary for the sexual harassment and assaults to occur, and prevented any reasonable opportunity for her to avoid harm based on her age and lack of supervision."

Even with these variations, Doe's pleadings do not fall within the TTCA's waiver for premises defects. Doe did not allege that the City had actual knowledge of any "non-functioning or improperly placed" cameras or dangerously isolating rooms. Nor did she allege that she lacked actual knowledge of the nonfunctioning or improperly placed cameras or of the dangerously isolating rooms. These omitted allegations were essential elements of Doe's remodeled premises liability claims, so her failure to plead these elements undermined her modified claims and the trial court's subject matter jurisdiction over them. *See Carter-Jones*, 2018 WL 547588, at *4 (listing

25

elements that plaintiff was required to plead to establish that the TTCA waived immunity for premises liability claim).

But Doe's failure to plead these elements is merely a symptom of the root issue: the dangerous condition at the heart of Doe's pleadings was a human—not a condition of real property. She alleged that the City had actual knowledge that Morgan presented an unreasonable risk of harm—not that the City had actual knowledge that the cameras or rooms presented an unreasonable risk of harm. *Cf. Sampson*, 500 S.W.3d at 392–97 (discussing knowledge requirement and noting that "the owner [must] actually kn[o]w of the 'dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition c[ould] develop over time'" (quoting *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010))); *Carter-Jones*, 2018 WL 547588, at *5–6 (similar, holding that the jurisdictional evidence did not create a fact issue regarding the governmental entity's actual knowledge and dismissing plaintiff's claims). And she alleged that the condition of the cameras and rooms were among the circumstances that made Morgan's injurious conduct possible—not that the cameras and rooms themselves actually caused her injuries.[16]

---

[16]Our sister courts have rejected arguments similar to Doe's on causation grounds. In *Bonham v. Texas Department of Criminal Justice*, for example, a state jail guard sexually assaulted a prisoner in a restroom. 101 S.W.3d 153, 156, 158 (Tex. App.—Austin 2003, no pet.). The Austin Court of Appeals rejected the idea that the defective layout proximately caused the prisoner's injuries, explaining that "[a]lthough the layout of the facility was part of the context of the guard's sexual assault on [the prisoner], it was, at most, a condition that made the guard's intervening intentional act possible," and could not "satisfy the requirement of proximate cause under the

26

*Sampson*, 500 S.W.3d at 388, 391 (distinguishing between negligent activity claims and premises liability claims and explaining that, for the latter "it is a [static] condition of real property . . . that allegedly caused the injury"); *Tex. S. Univ. v. Mouton*, 541 S.W.3d 908, 916 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (recognizing that the TTCA's real property provision requires that "[t]he realty itself must be the cause of the injury, not merely the backdrop"). The very nature of Doe's pleading deficiencies demonstrates that Morgan—a human—was the dangerous premises condition at the heart of her complaint.

Because a dangerous human is not a dangerous condition of real property, Doe failed to plead facts situating her claims within the TTCA's waiver for premises defects. We overrule Doe's first issue.

---

[TTCA]." *Id.* at 158–59. And again, in *Dimas v. Texas State University System*, the Houston Court of Appeals held that the TTCA's real property provision did not apply to a student's claim against her university. 201 S.W.3d 260, 265 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The student was sexually assaulted beneath a dark stairwell that contained defective lighting, and although she claimed that the defective lighting was a premises defect, the court of appeals concluded that "the actions of her attacker, not the allegedly defective lights, were the proximate cause" of the student's injuries. *Id.* at 265; *see also Lamar Univ.*, 971 S.W.2d at 192, 196 (holding TTCA's waiver for premise defects inapplicable because "it was the occupant of the dormitory room who brought about the injuries to the [plaintiffs'] children, not the dormitory room itself").

### c. Joint Enterprise

Doe also alleges that the City waived its immunity by engaging in a joint enterprise with PetSmart. Even assuming that the alleged joint enterprise existed, though, it did not waive the City's liability for Doe's claims.

"Joint enterprise liability makes 'each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other.'" *Able*, 35 S.W.3d at 613 (quoting *Shoemaker*, 513 S.W.2d at 14). Thus, assuming the City's relationship with PetSmart constituted a joint enterprise, it could be liable if PetSmart's actions as the City's agent in the joint enterprise "br[ought] the liability within the waiver of sovereign immunity language in the [TTCA]." *Able*, 35 S.W.3d at 613; *see Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 219 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (clarifying that "the *Able* court utilized joint enterprise not as an *independent* basis for waiver but, rather, to 'bring the liability within' the waiver provisions of the Tort Claims Act" (quoting *Able*)). But that is not what Doe argues here.

Doe has clearly, unequivocally, and repeatedly stated that she is "not arguing that PetSmart has any liability in this case" and she "did not, and do[es] not, argue that PetSmart is responsible for [her] injuries." These statements undermine Doe's attempted reliance on the joint enterprise theory. The theory is inapplicable and does not waive the City's immunity. We overrule Doe's second issue.

28

## C. Doe was not entitled to another opportunity to amend.

Finally, Doe argues that the trial court should have given her the opportunity to amend her pleadings to address any jurisdictional defects.[17] But Doe had already amended her pleadings to no avail.

"If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action" with prejudice. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639–40 (Tex. 2004) (holding dismissal with prejudice was proper where plaintiff amended petition after governmental entity filed its plea but amended petition failed to cure jurisdictional defects).

In *Matzen v. McLane*, for example, the Texas Supreme Court held that the plaintiff was not entitled to an opportunity to amend his pleadings because he "ha[d] already repleaded" after the governmental entity filed its plea to the jurisdiction, the amended pleadings stated "no viable claim affirmatively demonstrating a waiver of, or exception to, sovereign immunity," and the plaintiff's "briefing in [the Supreme] Court advance[d] no viable theories of liability." 2021 WL 5977218, at *10; *see also*

---

[17]The City claims that Doe did not ask the trial court for an opportunity to amend her pleadings, but this is not the case. In Doe's response to the City's plea, she "request[ed], if necessary, the opportunity to amend and clarify [her] complaint." And when the trial court heard arguments on the City's plea, Doe again requested an "opportunity to amend."

29

*Tex. Dep't of Crim. Just.-Cmty. Just. Assistance Div. v. Campos*, 384 S.W.3d 810, 815–16 (Tex. 2012) (holding that plaintiffs were not entitled to opportunity to replead because they had amended their petition multiple times after the governmental entity had filed its plea but "nevertheless ha[d] not alleged or shown facts demonstrating [that] their injuries were caused by [the governmental entity's] use of tangible property" within the meaning of the TTCA).

Doe had the opportunity to, and did in fact, amend her petition after the City filed its plea to the jurisdiction. While Doe's original petition relied solely on her argument that the volunteer program was a proprietary function, her amended petition added alternative arguments that the TTCA waived the City's immunity, and she incorporated new allegations regarding the City's keycards, its surveillance cameras, and its partnership with PetSmart.[18]

But, as we have held, Doe's amended petition still failed to allege any viable exceptions to or waivers of sovereign immunity. Even now, Doe has not identified any viable theories of liability,[19] nor has she identified what factual circumstances she could have added to her petition to situate her claims within the TTCA. *Cf. Clint*

---

[18]The City supplemented its plea to address the new allegations in Doe's amended petition, and in that supplement, the City noted that the "Amended Petition d[id] not cure the jurisdictional defects identified by the City based on the facts of this case."

[19]Doe alludes to several employment claims, including a claim under the Texas Labor Code, but she does not allege that those claims provide a basis for the City's waiver of immunity.

*Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016) (noting that the opportunity to amend "is a mechanism for parties, over whose claims the trial court may have jurisdiction, to plead facts tending to establish that jurisdiction, not for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction"); *Dunson v. Jacobson*, No. 02-18-00059-CV, 2019 WL 4122606, at *7 (Tex. App.—Fort Worth Aug. 29, 2019, no pet.) (mem. op.) (holding plaintiff was not entitled to opportunity to replead because there was no waiver of immunity and "pleading additional facts or different labels for his cause of action would not change his predicament").

Because Doe "pleaded no viable claim affirmatively demonstrating a waiver of, or exception to, sovereign immunity" and because she "has already been permitted to amend h[er] petition to no avail," *Matzen*, 2021 WL 5977218, at *10, she is not entitled to another opportunity to amend her amended petition. We overrule Doe's fourth issue.

## IV. Conclusion

The reprehensible nature of Doe's sexual assault does not change the law: the City is immune from Doe's tort claims. Because Doe did not plead facts demonstrating a valid waiver of or exception to the City's immunity, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  May 12, 2022